**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARIA MEZEI,<br><br>Plaintiff,<br><br>-against-<br><br>DEBORAH LOEFFLER a/k/a DEBORA LOEFFLER, and JOHN FRANKL,<br><br>Defendants. | Civil Action No.<br>____-cv-_______ (____) (____)<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Maria Mezei ("Plaintiff"), by her attorneys, Palloj Law PLLC, as and for her Complaint against Defendants Deborah Loeffler a/k/a Debora Loeffler ("Defendant Loeffler") and John Frankl ("Defendant Frankl," and together with Defendant Loeffler, "Defendants"), alleges as follows:

## PRELIMINARY STATEMENT

1. For nearly five and a half years, from October 22, 2020 through April 5, 2026, Plaintiff worked as a live-in home health aide for Defendant Loeffler in Defendant Loeffler's home in Brooklyn, New York.

2. Plaintiff worked continuous, around-the-clock 24 hour shifts of four, five, and at times six or more consecutive days. Throughout each shift Plaintiff was on duty day and night: she cleaned, cooked, did the laundry, and cared for Defendant Loeffler during the day, ate her meals while working, and was awakened repeatedly every several hours to assist Defendant Loeffler.

3. Defendants paid Plaintiff a flat day rate, entirely in cash, of between $200 and $400 per 24-hour day, regardless of how many hours she worked. Because Plaintiff was on duty approximately 96 to 120 hours in an ordinary week, and more in many weeks, Defendants' flat day rate yielded an effective hourly wage below the New York minimum wage throughout her

employment. Defendants never paid Plaintiff any overtime premium, never gave her a written wage notice or a single wage statement, and never kept any record of her hours.

4. Plaintiff brings this action to recover unpaid overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and unpaid minimum wages, unpaid overtime compensation, spread-of-hours pay, day-of-rest premium pay, and statutory damages under the New York Labor Law ("NYLL"), including NYLL §§ 161, 170, 190 *et seq.*, and 650 *et seq.*, and the Minimum Wage Order for Miscellaneous Industries and Occupations, 12 N.Y.C.R.R. Part 142, together with liquidated damages, prejudgment and post-judgment interest, and reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. §§ 1331 and 1337 and 29 U.S.C. § 216(b).

6. This Court has supplemental jurisdiction over Plaintiff's NYLL claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same employment relationship and the same pay practices as her FLSA claims and form part of the same case or controversy under Article III of the United States Constitution.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because both Defendants reside in Kings County, New York, and all of the events and omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

8. Plaintiff Maria Mezei is a natural person who resides in Kings County, New York. At all relevant times, Plaintiff was an "employee" of Defendants within the meaning of 29 U.S.C.

§ 203(e) and NYLL §§ 2(5), 190(2), and 651(5), and a "domestic worker" within the meaning of NYLL § 2(16).

9. Upon information and belief, Defendant Deborah Loeffler, who is also known within her household as "Debora Loeffler," is a natural person who resides at 1612 55th Street, Brooklyn, New York 11204. At all relevant times, Defendant Loeffler was an "employer" of Plaintiff within the meaning of 29 U.S.C. § 203(d) and NYLL §§ 2(6), 190(3), and 651(6).

10. Upon information and belief, Defendant John Frankl is a natural person who is Defendant Loeffler's brother and who resides at, 1137 56th Street, Brooklyn, New York 11219. At all relevant times, Defendant Frankl was an "employer" of Plaintiff, jointly with Defendant Loeffler, within the meaning of 29 U.S.C. § 203(d) and NYLL §§ 2(6), 190(3), and 651(6), for the reasons set forth in paragraphs 41 and 42 below.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Employment

11. On or about October 22, 2020, Defendant Loeffler hired Plaintiff to work as a live-in home health aide for Defendant Loeffler in Defendant Loeffler's home at 1612 55th Street, Brooklyn, New York (the "Home").

12. Plaintiff worked for Defendants continuously from October 22, 2020 through April 5, 2026, when Defendant John Frankl terminated her employment and gave Plaintiff a severance agreement.

13. During the four to six days of each week that she worked, Plaintiff resided in Defendant Loeffler's household. Throughout her employment, however, Plaintiff maintained a separate residence in Brooklyn, New York, to which she returned at the end of each 4, 5 or 6 day shift.

**B. Plaintiff's Duties**

14. Plaintiff's duties included providing hands-on personal care to Defendant Loeffler, including, without limitation, assisting Defendant Loeffler with bathing, assisting her with toileting, assisting her with transfers into and out of bed, chairs, and the bath, preparing and serving her meals (breakfast and lunch), and assisting her with her medications, and attending to Defendant Loeffler throughout the night.

15. Plaintiff's duties also included cleaning the entire Home, cooking, and doing the laundry. Defendants required Plaintiff to perform household tasks every day, including, without limitation, dusting, vacuuming, cleaning the bathroom (including the toilet, tub, and shower), mopping the kitchen floors, scrubbing the kitchen counters, cleaning pots and pans, loading and unloading the dishwasher, meal preparation, and taking out the garbage. She did laundry and changed bed linen.

16. Plaintiff spent at least 30 percent of her working time each week performing household work and hands-on personal care for Defendant Loeffler, as distinct from merely providing fellowship and protection. Deborah had no outside housekeeper other than Plaintiff.

**C. Plaintiff's Schedule and Hours Worked**

17. From on or about October 22, 2020 through on or about April 30, 2022, Plaintiff worked four days per week as a single continuous shift, for 96 consecutive hours on duty each week.

18. From on or about May 1, 2022 through April 5, 2026, Plaintiff worked five days per week as a single continuous shift, for 120 consecutive hours on duty each week.

19. In addition, Defendants regularly required Plaintiff to remain on duty through Shabbos (the Jewish Sabbath), which extended her shift to six consecutive days, or approximately 144 hours, in certain weeks.

20. Upon information and belief, Plaintiff worked through Shabbos approximately half of the weeks of each year.

21. In addition, each year Defendant Loeffler spent several weeks outside New York City, and Defendants required Plaintiff to accompany Defendant. During these trips, Plaintiff worked her usual weekday shift and was also required to remain on duty through each weekend, so that she worked 21 consecutive days, 24 hours per day, without a single day off, every year.

22. Even the periods, where Defendant Loeffler resided in a nursing home, Defendants required Plaintiff to sleep in the same room as Defendant Loeffler and to be on duty 24 hours per day, five to six days per week.

23. During each shift, Plaintiff was not permitted to leave the Home or, during the nursing-home period described above, the nursing home, and she was required to be available to Defendant Loeffler at all times. Plaintiff was never relieved of duty for a meal period and never received a meal break; she ate her meals while working.

24. When Plaintiff was permitted to leave the Home to eat lunches it was to take Defendant Loeffler out to lunch and she would eat with her.

25. Defendant Loeffler typically went to sleep at approximately 1:00 a.m. and woke approximately three to four times every night. Each time, Defendants required Plaintiff to get up and attend to Defendant Loeffler to keep her from falling. As a result, Plaintiff never received five hours of uninterrupted sleep during any night of any shift throughout her employment.

26. Plaintiff never agreed, orally or in writing, to exclude any sleep time, meal time, or other time from her compensable hours.

27. Because Plaintiff was on duty, was engaged to wait, did not receive uninterrupted sleep, and was not relieved for meals, all of the hours of each of her shifts were hours worked. Accordingly, Plaintiff worked approximately 96 hours in each full workweek from October 22, 2020 through April 30, 2022; approximately 120 hours in each full workweek from May 1, 2022 through April 5, 2026; approximately 144 hours in each week in which she worked through Shabbos; and approximately 168 hours in each week of Defendant Loeffler's annual trips.

28. By way of example only, in every full workweek between June 1, 2024 and December 31, 2025, Plaintiff worked approximately 120 hours and Defendants paid her $1,500 in cash, with no overtime premium for any of the approximately 80 hours she worked over 40.

29. Upon information and belief, Defendants did not keep any record of the hours Plaintiff worked, and provided her with no accurate wage statements regarding same. The hours alleged in this Complaint are based on Plaintiff's recollection and her fixed weekly schedule.

**D. Plaintiff's Pay**

30. Defendants paid Plaintiff a flat day rate, as follows: (a) from on or about October 22, 2020 through on or about April 30, 2022, $200 per day, or $800 per week; (b) from on or about May 1, 2022 through on or about May 31, 2024, $250 per day, or $1,250 per week; (c) from on or about June 1, 2024 through December 31, 2025, $300 per day, or $1,500 per week; and (d) from January 1, 2026 through April 5, 2026, $400 per day, or $2,000 per week.

31. Upon information and belief, Defendants paid Plaintiff entirely in cash.

32. Defendants paid Plaintiff the same flat day rate regardless of the number of hours she worked. Defendants did not pay Plaintiff any additional compensation for the hours she worked

in excess of 40 per week, for the nights she spent attending to Defendant Loeffler, for the round-the-clock duty she performed during the nursing-home period, or for the additional days she worked through Shabbos and during the annual trips.

33. Dividing Plaintiff's weekly pay by the hours she worked each week, Defendants paid Plaintiff an effective hourly rate below the New York minimum wage in effect in New York City throughout her employment.

34. The applicable minimum wage in New York City for a private employer, who is a home care aide was as follows: For the dates of December 31st 2019 to September 30th 2022, $15.00 per hour; for the dates of October 1st 2022 to December 30th 2022, per Public Health Law § 3614-f, minimum wage of $17.00 per hour; For the dates of January 1st 2024 to December 31st 2024, per Public Health Law § 3614-f, minimum wage of $18.55 per hour; For the dates of January 1st 2025 to December 31st 2025, per Public Health Law § 3614-f, minimum wage of: $19.10 per hour; For the dates of January 1st 2026 to December 31st 2026, per Public Health Law § 3614-f, minimum wage of: $19.65 per hour.[1]

35. Defendants did not pay Plaintiff an overtime premium of one and one-half times her regular rate for any hours she worked over 40 in any workweek.

36. Throughout her employment, Plaintiff was not given any vacation, was not paid for any holiday, and was not paid any additional compensation for working on holidays.

37. When Plaintiff needed a day off, she was, in almost every instance, required to find her own replacement. Defendants rejected most of the replacements Plaintiff proposed, and any substitute who did cover for her, whether found by Plaintiff or by Defendant Loeffler's family,

[1] https://dol.ny.gov/history-minimum-wage-new-york-state

was criticized as inadequate, with Plaintiff made to absorb the complaints. As a result, taking a day off was, in practice, nearly impossible and led Plaintiff to suffer mental anguish.

38. In each week in which Plaintiff worked through Shabbos, and in each week of Defendant Loeffler's annual trips, Defendants did not provide Plaintiff with at least 24 consecutive hours of rest and did not pay her at the overtime rate for the hours she worked on her day of rest.

**E. Defendants' Failure to Provide Wage Notices, Wage Statements, and Required Postings**

39. Defendants never provided Plaintiff with a written notice, at the time of hiring or when her rate of pay changed on or about May 1, 2022, June 1, 2024, and January 1, 2026, stating her regular hourly rate, her overtime rate, the basis of her pay, or any of the other information required by NYLL § 195(1), whether in English or in Plaintiff's primary language, Hungarian.

40. Defendants never provided Plaintiff with a wage statement with any payment of wages listing the hours she worked, her rates of pay, or any of the other information required by NYLL § 195(3).

41. Defendants did not post in the Home, or otherwise provide to Plaintiff, any notice of employees' rights to minimum wage and overtime pay under the FLSA or the NYLL.

42. Defendants' failure to provide wage notices and wage statements caused Plaintiff concrete harm. Because Defendants never told Plaintiff in writing what her hourly rate was, how many hours she was being paid for, or what overtime rate applied, Plaintiff could not determine that her flat day rate fell below the minimum wage or that she was owed overtime, and she did not learn that she had been underpaid until after her employment ended. Had Defendants provided accurate notices and statements reflecting her actual hours and rates, the underpayment would have been apparent to Plaintiff, and she would have objected to it and sought proper payment during her employment. Defendants' failure to provide the required notices and statements thus enabled

Defendants to continue underpaying Plaintiff, week after week, for more than five years, and to retain wages that Plaintiff otherwise would have obtained sooner.

**F. Defendant Frankl Was Plaintiff's Joint Employer**

43. Defendant Frankl, directly and indirectly, exercised control over the terms and conditions of Plaintiff's employment. Among other things, upon information and belief, Defendant Frankl:

(a) participated in decisions to accept or reject the substitute caregivers proposed to cover Plaintiff's requested days off;

(b) participated in decisions regarding Plaintiff's rate of pay, and objected to the increase in Plaintiff's rate of pay;

(c) directed that all communications concerning Plaintiff's employment and separation be made to him;

(d) terminated Plaintiff's employment on or about April 5, 2026;

(e) in connection with that termination, offered Plaintiff a proposed severance agreement that bore his name; and

(f) upon information and belief, controlled the funds from which Plaintiff's wages were paid.

44. By reason of the foregoing, Defendant Frankl possessed and exercised the power to hire and fire Plaintiff, supervised and controlled her work schedule and conditions of employment, and determined her rate and method of pay, and he was Plaintiff's employer, jointly with Defendant Loeffler, under the FLSA and the NYLL.

45. Defendant Loeffler, in turn, hired Plaintiff, set her schedule, assigned and directed her daily work, decided whether to accept the substitutes who would cover her days off, and paid her wages.

46. Upon information and belief Defendant Frankl held fiduciary authority over Deborah.

47. Defendants are jointly and severally liable for the violations alleged herein.

**G. FLSA Coverage and Inapplicability of Exemptions**

48. At all relevant times, Plaintiff was employed in domestic service in a household within the meaning of 29 U.S.C. §§ 206(f) and 207(l). Plaintiff worked far more than eight hours per week, and her compensation in each calendar year far exceeded the amount required to constitute "wages" under Section 209(a)(6) of the Social Security Act. Plaintiff was therefore covered by the FLSA without regard to any enterprise's annual dollar volume of business.

49. Plaintiff was not exempt under the companionship-services exemption, the household work and hands-on personal care Plaintiff performed, described in paragraphs 15 through 17 above, went far beyond fellowship and protection and consumed well over 30 percent of her working time each week. *See* 29 C.F.R. § 552.6.

50. Plaintiff was not exempt from the FLSA's overtime requirements, she maintained a separate residence throughout her employment, returned to it at the end of every shift, and stayed in Defendant Loeffler's household only for the days she was working. From October 22, 2020 through April 30, 2022, Plaintiff worked and stayed in Defendant Loeffler's household only four days, or 96 hours, per week.

51. No exemption under the NYLL applies to Plaintiff. As a domestic worker, Plaintiff was entitled under NYLL § 170 and 12 N.Y.C.R.R. § 142-2.2 to overtime compensation at one

and one-half times her regular rate of pay for all hours worked in excess of 40 per week, or, in the alternative, in excess of 44 per week.

**H. Willfulness**

52. Defendants' violations were willful. Defendants set Plaintiff's schedule of continuous, multi-day shifts and therefore knew how many hours she worked each week; paid her a flat day rate in cash that did not vary with those hours; kept no records of her hours; never provided wage notices or wage statements; and never posted the required notices of employees' rights. Defendants knew, or showed reckless disregard for whether, their pay practices violated the FLSA and the NYLL.

**AS AND FOR A FIRST CAUSE OF ACTION**
**Fair Labor Standards Act — Unpaid Overtime, 29 U.S.C. §§ 207, 216(b) (Against All Defendants)**

53. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

54. The FLSA required Defendants to pay Plaintiff overtime compensation at one and one-half times her regular rate of pay for all hours worked in excess of 40 in a workweek. Because Defendants paid Plaintiff a flat day rate, her regular rate in each workweek was her total weekly pay divided by her total hours worked. *See* 29 C.F.R. § 778.112.

55. Defendants failed to pay Plaintiff any overtime premium for the hours she worked in excess of 40 in each workweek.

56. Defendants' violations were willful within the meaning of 29 U.S.C. § 255(a), so that a three-year limitations period applies.

57. As a result, Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid overtime compensation, an equal amount as liquidated damages, and reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## AS AND FOR A SECOND CAUSE OF ACTION

### New York Labor Law — Unpaid Minimum Wages, NYLL §§ 652, 663; 12 N.Y.C.R.R. § 142-2.1 (Against All Defendants)

58. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

59. The NYLL and 12 N.Y.C.R.R. § 142-2.1 required Defendants to pay Plaintiff no less than the New York minimum wage for every hour she worked.

60. The applicable minimum wage in New York City for a private employer, who is a home care aide was as follows: For the dates of December 31st 2019 to September 30th 2022, $15.00 per hour; for the dates of October 1st 2022 to December 30th 2022, per Public Health Law § 3614-f, minimum wage of $17.00 per hour; For the dates of January 1st 2024 to December 31st 2024, per Public Health Law § 3614-f, minimum wage of $18.55 per hour; For the dates of January 1st 2025 to December 31st 2025, per Public Health Law § 3614-f, minimum wage of: $19.10 per hour; For the dates of January 1st 2026 to December 31st 2026, per Public Health Law § 3614-f, minimum wage of: $19.65 per hour.[2]

61. Defendants failed to pay Plaintiff the minimum wage for all hours she worked, as set forth above.

62. Defendants' violations were willful within the meaning of NYLL § 663(1).

---

[2] https://dol.ny.gov/history-minimum-wage-new-york-state

63. As a result, Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid minimum wages, liquidated damages equal to 100 percent of the unpaid wages, prejudgment interest, and reasonable attorneys' fees and costs pursuant to NYLL §§ 198(1-a) and 663(1), for the six years preceding the filing of this Complaint, NYLL §§ 198(3), 663(3).

**AS AND FOR A THIRD CAUSE OF ACTION**
**New York Labor Law — Unpaid Overtime, NYLL §§ 170, 663; 12 N.Y.C.R.R. § 142-2.2 (Against All Defendants)**

64. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

65. NYLL § 170 and 12 N.Y.C.R.R. § 142-2.2 required Defendants to pay Plaintiff, as a domestic worker, overtime compensation at one and one-half times her regular rate of pay for all hours worked in excess of 40 per week or, in the alternative, in excess of 44 per week.

66. Defendants failed to pay Plaintiff any overtime compensation for the hours she worked in excess of 40, or in the alternative 44, in each workweek.

67. As a result, Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid overtime compensation, liquidated damages equal to 100 percent of the unpaid wages, prejudgment interest, and reasonable attorneys' fees and costs pursuant to NYLL §§ 198(1-a) and 663(1), for the six years preceding the filing of this Complaint.

**AS AND FOR A FOURTH CAUSE OF ACTION**

**New York Labor Law — Spread-of-Hours Pay, 12 N.Y.C.R.R. § 142-2.4 (Against All Defendants)**

68. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

69. 12 N.Y.C.R.R. § 142-2.4 required Defendants to pay Plaintiff one additional hour of pay at the basic minimum hourly wage rate for each day on which the interval between the beginning and end of her workday exceeded 10 hours.

70. The spread of Plaintiff's workday exceeded 10 hours on every day of every shift she worked, and Defendants never paid her spread-of-hours pay. Because Defendants paid Plaintiff an effective hourly rate below the minimum wage, Plaintiff was entitled to spread-of-hours pay.

71. As a result, Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid spread-of-hours pay, liquidated damages, prejudgment interest, and reasonable attorneys' fees and costs pursuant to NYLL §§ 198(1-a) and 663(1).

## AS AND FOR A FIFTH CAUSE OF ACTION

**New York Labor Law — Domestic Workers' Day of Rest, NYLL §§ 161, 170 (Against All Defendants)**

72. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

73. As a domestic worker, Plaintiff was entitled under NYLL § 161 to at least 24 consecutive hours of rest in each calendar week and, if she agreed to work on her day of rest, to be paid at the overtime rate for those hours.

74. In each week in which Plaintiff worked through Shabbos and in each week of Defendant Loeffler's annual trips, Defendants did not provide Plaintiff with 24 consecutive hours of rest and did not pay her at the overtime rate for the hours she worked on her day of rest.

75. As a result, Plaintiff is entitled to recover from Defendants, jointly and severally, to the extent not duplicative of the relief sought in the Third Cause of Action, the overtime premium owed for the hours she worked on her days of rest, liquidated damages, prejudgment interest, and reasonable attorneys' fees and costs pursuant to NYLL §§ 198 and 663.

## AS AND FOR A SIXTH CAUSE OF ACTION

**New York Labor Law — Failure to Provide Wage Notices, NYLL §§ 195(1), 198(1-b)**
**(Against All Defendants)**

76. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

77. NYLL § 195(1) required Defendants to provide Plaintiff, at the time of hiring and within seven days of any change in her rate of pay, a written notice, in English and in her primary language, of her rate or rates of pay and the basis thereof, her overtime rate, her regular payday, and the other information required by the statute.

78. Defendants willfully never provided Plaintiff with any such notice.

79. As a result, Plaintiff is entitled to recover from Defendants, jointly and severally, statutory damages of $50 for each workday on which the violation occurred, up to a maximum of $5,000, together with reasonable attorneys' fees and costs, pursuant to NYLL § 198(1-b).

## AS AND FOR A SEVENTH CAUSE OF ACTION

**New York Labor Law — Failure to Provide Wage Statements, NYLL §§ 195(3), 198(1-d)**
**(Against All Defendants)**

80. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

81. NYLL § 195(3) required Defendants to furnish Plaintiff with each payment of wages a statement listing, among other things, the dates of work covered, her rate or rates of pay and the basis thereof, her regular and overtime hours worked, and her gross and net wages.

82. Defendants willfully never furnished Plaintiff with any such statement.

83. As a result, Plaintiff is entitled to recover from Defendants, jointly and severally, statutory damages of $250 for each workday on which the violation occurred, up to a maximum of $5,000, together with reasonable attorneys' fees and costs, pursuant to NYLL § 198(1-d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants, jointly and severally, as follows:

(a) awarding Plaintiff her unpaid overtime compensation under the FLSA and the NYLL, and her unpaid minimum wages, spread-of-hours pay, and day-of-rest premium pay under the NYLL, in an amount to be determined at trial;

(b) awarding Plaintiff liquidated damages pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198(1-a) and 663(1), without duplication for the same unpaid wages;

(c) awarding Plaintiff statutory damages pursuant to NYLL §§ 198(1-b) and 198(1-d);

(d) awarding Plaintiff prejudgment interest on her NYLL claims at the rate of nine percent per annum pursuant to CPLR §§ 5001 and 5004;

(e) awarding Plaintiff post-judgment interest pursuant to 28 U.S.C. § 1961;

(f) providing that, if any amounts awarded under the NYLL remain unpaid upon the expiration of 90 days following the issuance of judgment, or 90 days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by 15 percent, pursuant to NYLL §§ 198(4) and 663(4);

(g) awarding Plaintiff her reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198 and 663; and

(h) granting such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated: Brooklyn, New York
October 21, 2026

Respectfully submitted,

**PALLOJ LAW PLLC**

By: */s/ Malvina Palloj*
Malvina Palloj, Esq.
8212 17th Avenue
Brooklyn, New York 11214
(347) 453-1239
malvina@pallojlaw.com

*Attorney for Plaintiff*